UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | Criminal No.: H-19-450 |
| JEFFREY STERN, Defendant | § § § | |

**Plea Agreement**

The United States of America, by and through Ryan K. Patrick, United States Attorney for the Southern District of Texas, and Robert S. Johnson, Assistant United States Attorney, and the defendant, Jeffrey Stern, and defendant's counsel, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

**Defendant's Agreement**

1. Defendant agrees to plead guilty to Counts One and Three of the Second Superseding Indictment. Count One charges defendant with conspiracy to defraud the United States, in violation of Title 18, United States Code, Section 371. Count Three charges defendant with willfully filing a false tax return, in violation of Title 26, United States Code, Section 7206(1). Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the Indictment, proved to a jury, or proved beyond a reasonable doubt.

**Punishment Range**

2. The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 371, is imprisonment of not more than 5 years and a fine of not more than $250,000.

1

The **statutory** maximum penalty for each violation of Title 26, United States Code, Section 7206(1), is imprisonment of not more than 3 years and a fine of not more than $250,000. Additionally, Defendant may receive a term of supervised release after imprisonment of up to 3 years under Count One and up to 1 year under Count Three  *See* Title 18, United States Code, sections 3559(a)(5) and 3583(b)(3).  Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation.  *See* Title 18, United Stated Code, sections 3559(a)(5) and 3583(e)(3).  Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction.  The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States.  Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future.  Defendant's

attorney has advised defendant of the potential immigration consequences resulting from defendant's plea of guilty.

## Cooperation

5. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing and fully cooperate with the United States. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6. Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to tax fraud, barratry, and insurance fraud. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

    (a)    Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas, the Tax Division of the United States Department of Justice, and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

    (b)    Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. For the purpose of this agreement, Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination, except to the extent public testimony by Defendant tends to incriminate him beyond the scope of the federal crimes for which he is pleading guilty, in which case Defendant agrees to testify pursuant to an order under 18 U.S.C. § 6002 et seq.;

3

(c) Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d) Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e) Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and

(f) Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his plea.

## Waiver of Appeal and Collateral Review

7. Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. In the event defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and will seek specific performance of these waivers.

8. In agreeing to these waivers, defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing

range under the sentencing guidelines that he may have received from his counsel, from the United States, or from the U.S. Probation Office is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the U.S. Probation Office, or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing defendant, the Court is not bound to follow the Sentencing Guidelines nor to sentence defendant within the calculated guideline range.

9. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

## The United States' Agreements

10. The United States agrees to each of the following:

(a) If Defendant pleads guilty to Counts One and Three of the Second Superseding Indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the indictment at the time of sentencing;

(b) If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his or her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

### Agreement Binding - Southern District of Texas and Tax Division Only

11. The United States Attorney's Office for the Southern District of Texas and the Tax Division of the United States Department of Justice ("Tax Division") agree that they will not further criminally prosecute defendant for offenses arising from conduct charged in the Second Superseding Indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas, the Tax Division, and defendant. It does not bind any other United States Attorney's Office or component of the Department of Justice. The United States Attorney's Office for the Southern District of Texas and the Tax Division will bring this plea agreement and the full extent of defendant's cooperation to the attention of other prosecuting offices, if requested.

### United States' Non-Waiver of Appeal

12. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the U.S. Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with defendant's counsel and the U.S. Probation Office;

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

13. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense to which defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or if the Court should order any or all of the sentences imposed to run consecutively, defendant cannot, for that reason alone, withdraw a guilty plea. Defendant will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

14. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

> (a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if defendant, the United States, and the court all agree;

> (b) At a trial, the United States would be required to present witnesses and other evidence against defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn,

defendant could, but would not be required, to present witnesses and other evidence on his own behalf. If the witnesses for defendant would not appear voluntarily, defendant could require their attendance through the subpoena power of the court; and

(c) At a trial, defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if defendant desired to do so, he could testify on his own behalf.

**Factual Basis for Guilty Plea**

15. Defendant is pleading guilty because he is in fact guilty of the charges contained in Count One and Count Three of the Second Superseding Indictment. If this case were to proceed to trial, the United States could prove each element of the offenses beyond a reasonable doubt. The following facts, among others, would be offered to establish defendant's guilt:

Defendant Jeffrey Stern is an attorney who practices personal injury law in Houston, Texas through his law firm, known at various times as Stern, Miller & Higdon, Jeffrey M. Stern, Attorney at Law, or the Stern Law Group. Defendant enriched himself by illegally recruiting law firm clients through the payment of kickbacks in order to generate personal injury cases and legal fees. Specifically, from at least 2006 and continuing into 2019, Defendant obtained clients for his firm through the illegal practice of barratry, in which Defendant paid "case runners" for the referral of personal injury clients to his firm.

A "case runner" is a non-attorney who collects a fee (an illegal kickback) for referring clients to attorneys. Under Texas law, it is illegal for an attorney to pay a non-attorney, such as a case runner, for client referrals, although under limited circumstances an attorney may split a fee with a referring attorney. Three of the case runners whom Defendant illegally paid for client referrals were Frederick Morris, Lamont Ratcliff, and Marcus Esquivel.

8

Defendant took improper deductions on his federal tax returns for his illegal kickback payments to case runners. Under the U.S. Tax Code, a business may claim a tax deduction for the "ordinary and necessary" expenses incurred in conducting the business. However, illegal kickbacks, such as payments by an attorney to a case runner, do not constitute deductible business expenses. These improper deductions substantially reduced the amount of taxable income Defendant reported to the Internal Revenue Service (IRS) and the amount of tax he paid.

Defendant took various measures to conceal and disguise his illegal kickback payments from the IRS and to hide his resulting income from the IRS. Defendant filed, or caused others to file, false documents with the IRS, including tax returns, Forms 1099, and an Offer in Compromise, that falsely reported material information, such as amounts of income, expenses, and tax due and owing. Defendant also failed to report income from checks cashed with check cashers.

Defendant employed various methods to disguise his illegal kickbacks to Frederick Morris as legal, deductible business expenses. Defendant's primary method, which began in approximately 2006, was to disguise his illegal kickback payments to Morris as legitimate referral fees paid to three different attorneys. Defendant issued law-firm checks allegedly for referral fees made out in the names of attorneys identified as "Attorney 1," "Attorney 2," and "Attorney 3" in the Second Superseding Indictment. Morris took the checks from Defendant to check cashers where Morris cashed the checks, usually with forged endorsements. Morris kept a portion of the cash for himself as his illegal kickback and paid the rest to his sources, including Attorney 1, who had referred cases to Morris and Defendant.

In response to IRS civil audits, Defendant took further steps to hide the scheme. In approximately 2012, Defendant began filing false Forms 1099 with the IRS that claimed he had paid hundreds of thousands of dollars in legitimate referral fees to Attorney 1, when in reality the vast majority of the payments were illegal kickbacks. Defendant and Morris then caused false tax returns to be prepared and filed by Attorney 1 that matched the false Forms 1099 Defendant had filed. The false tax returns reported as income to Attorney 1 the illegal kickbacks that Defendant had paid. These tax returns attributed income to Attorney 1 that he had not actually received. Defendant, Morris, and Attorney 1 agreed that Defendant and Morris would help cover Attorney 1's tax burden. Defendant and Morris proceeded to make payments to Attorney 1 for Attorney 1's taxes. In 2017, to try to resolve Attorney 1's mounting false tax debt, a false Offer in Compromise was prepared and filed with the IRS on behalf of Attorney 1.

Defendant also paid illegal kickbacks for personal-injury client referrals to case-runner and medical-clinic-owner Lamont Ratcliff. As with the payments to Morris, Defendant improperly deducted on his tax returns the payments to Ratcliff as legitimate business expenses. In his law-firm books and records, Defendant mischaracterized the payments to Ratcliff as legitimate referral fees paid to an attorney. Defendant deducted the payments on his tax returns on that basis. From approximately 2012 through 2015, Defendant funneled kickback payments to Ratcliff through the account of attorney Deborah Bradley to make it appear Defendant was paying legitimate referral fees to Bradley instead of paying illegal kickbacks to Ratcliff.

In a similar manner, Defendant paid illegal kickbacks to case-runner Marcus Esquivel and improperly deducted the payments on Defendant's tax returns as legitimate business expenses in the form of referral fees paid to an attorney. From approximately 2011 through

10

2013, Defendant disguised his kickbacks to Esquivel by funneling the payments through the account of attorney Richard Plezia, so that the illegal kickback payments to Esquivel would appear to be legitimate referral fees paid to attorney Plezia.

After learning that he was the subject of a federal grand jury investigation, Defendant not only took steps to create a false documentary record to hide the scheme, he also endeavored to destroy the real record. Defendant ordered Esquivel to destroy documents sought by a grand jury subpoena, and he told Morris to shred documents related to Morris' dealings with Defendant.

Total tax loss to the United States resulting from Defendant's false U.S. Individual Income Tax Returns for tax years 2009 through 2017 is $4,351,431.58. Broken out by tax year, this tax loss is as follows:

| Tax year | Amount |
|---|---|
| Tax year 2009: | $375,063.43; |
| Tax year 2010: | $377,046.25; |
| Tax year 2011: | $337,185.51; |
| Tax year 2012: | $301,848.00; |
| Tax year 2013: | $703,212.00; |
| Tax year 2014: | $768,192.00; |
| Tax year 2015: | $566,569.00; |
| Tax year 2016: | $535,247.86; |
| Tax year 2017: | $387,067.43; |

Specifically, with respect to the 2013 tax year, on approximately August 14, 2014, Defendant filed a false 2013 U.S. Individual Income Tax Return, which he signed under penalty

of perjury. On the return, Defendant falsely reported illegal kickback payments to Morris, Esquivel, and Ratcliff as referral fee expenses and falsely reported a personal loan as a referral fee expense. Defendant's false tax deductions on his tax return totaled $1,664,837.18, and the unreported income totaled $26,584.87, causing net profit to be under-reported by $1,691,422.05, with a resulting tax loss to the United States for the 2013 tax year as indicated above.

## Breach of Plea Agreement

16. If defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and defendant's plea and sentence will stand. If at any time defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the court to set aside the guilty plea and to reinstate prosecution. Any information and documents that have been disclosed by defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

## Restitution and Fines

17. This Plea Agreement is being entered into by the United States on the basis of defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless defendant obtains the prior written permission of the United States.

18. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to defendant's complete financial disclosure.

19. Defendant agrees to assist fully in the collection of restitution and fines, including but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States. Nothing in this Agreement precludes the United States from pursuing statutorily permitted enforcement action and any and all remedies to collect restitution once a restitution order is imposed.

20. Defendant understands that restitution and fines are separate components of sentencing and are separate obligations.

### Restitution

21. Defendant understands that a mandatory restitution order will be imposed against him in this case, and Defendant agrees to pay full restitution to the victim, the IRS, regardless of the count of conviction. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that defendant will not attempt to avoid or

delay payment. Defendant agrees to pay restitution to the IRS in this case of $4,351,431.58. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court. Defendant understands that under 26 U.S.C. 6201(a)(4), the IRS will use the amount of restitution ordered as the basis for a civil assessment of taxes as set forth in the above tables.

22.     Defendant agrees to make his restitution payments to the Clerk of Court, including on each payment the defendant's name, social security number, the district court's docket number assigned this case, the tax periods for which restitution has been ordered, and a statement that the payment is being submitted pursuant to the Court's restitution order. The defendant shall also include with the restitution payment a request that the Clerk of Court send the information and restitution payment to the IRS at the following address:

> IRS-RACS
> Attn.: Mail Stop 6261, Restitution
> 333 W. Pershing Ave.
> Kansas City, MO 64108

The defendant also agrees to send a notice of any restitution payment made to the Clerk of Court to the IRS at the above address.

23.     Defendant agrees to sign any IRS forms deemed necessary by the IRS to enable the IRS to make an assessment of any amount ordered in restitution, including but not limited to IRS form 8821 entitled "Tax Information Authorization."

**Fines**

24.     Defendant understands that under the Sentencing Guidelines the Court is permitted to order defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by

the Court will be due and payable immediately, and defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

## Criminal Tax Loss and Civil Tax Liability

25. Defendant understands that the amounts of relevant conduct (intended tax loss) and restitution found by the court in this criminal case do not limit the IRS in determining whether defendant or any other taxpayer owes any additional civil taxes, interest, or civil penalties on any of defendant's U.S. Individual Income Tax Years. Defendant understands that the IRS is free to civilly audit any of defendant's or of any other taxpayer's U.S. Individual Income Tax Years and to seek additional taxes, interest, or civil penalties for such income tax years.

26. Defendant agrees not to file any claim for refund of any amount ordered or paid in restitution in this case. Defendant further agrees not to file any action in a U.S. District Court, in the U.S. Tax Court, or in the U.S. Court of Federal Claims seeking a refund, offset, or other recovery of any amounts ordered or paid in restitution in this case.

27. Defendant agrees to cooperate fully with the Internal Revenue Service in determining the correct tax liabilities owed on any of his U.S. Individual Income Tax Returns. Defendant agrees to make all books, records, and documents in his possession, custody, or control available to the Internal Revenue Service for use in computing all civil tax liabilities, both income tax liabilities and employment tax liabilities, of any taxpayers.

28. Nothing in this plea agreement shall limit the IRS in its lawful examination, determination, assessment, or collection of any taxes, penalties, or interest due from any taxpayer

for any income taxes. Defendant agrees that this plea agreement and any judgment, order, release, or satisfaction issued in connection with this plea agreement will not satisfy, settle, offset, or compromise defendant's or any other taxpayer's obligation to the pay the balance of any civil liabilities, including additional taxes, penalties, or interest on any U.S. Individual Income Tax Years of defendant or of any other taxpayer.

## Complete Plea Agreement

29 This written plea agreement, consisting of 19 pages, including the attached addendum of defendant and his attorney, constitutes the complete plea agreement between the United States, defendant, and defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

30. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston Texas, on ___February 14___, 2020.

_____
Jeffrey Stern
Defendant

Subscribed and sworn to before me on ___February 14___, 2020.

David J. Bradley
United States District Clerk

By: _____
Deputy United States District Clerk

APPROVED:

RYAN K. PATRICK
UNITED STATES ATTORNEY

By: _____    _____
Robert S. Johnson                                          Dean M. Blumrosen
Assistant United States Attorney                  Attorney for Defendant
Southern District of Texas

_____
David L. Botsford
Attorney for Defendant

_____
George McCall Secrest, Jr.
Attorney for Defendant

17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v.  § | Criminal No.: H-19-450 |
| § | |
| JEFFREY STERN, § | |
| Defendant § | |

**Plea Agreement -- Addendum**

I have fully explained to defendant his rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements, and I have fully and carefully explained to defendant the provisions of those Guidelines which may apply in this case. I have also explained to defendant that the Sentencing Guidelines are only advisory and the court may sentence defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with defendant. To my knowledge, defendant's decision to enter into this agreement is an informed and voluntary one.

_____          _2/14/20_____
Attorney for Defendant                              Date

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea

18

agreement with my attorney.   I understand this agreement and I voluntarily agree to its terms.

_____  
Jeffrey Stern  
Defendant

___2/14/20_____  
Date